UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>                Plaintiff,<br>v.<br><br>DORIS WINTERS a/k/a DORIS ANDERSON; LISA WINTERS; GARY WINTERS; and JAMES WINTERS,<br><br>                Defendants. | Case No. _____ |

## COMPLAINT FOR INTERPLEADER

Plaintiff, Unum Life Insurance Company of America ("Unum"), brings this action for interpleader relief pursuant to Federal Rule of Civil Procedure 22 to require Defendants Doris Winters a/k/a Doris Anderson, Lisa Winters, Gary Winters, and James Winters (collectively, "Defendants"), to interplead, or settle amongst themselves, competing claims made following the death of Decedent, for $44,000.00 in Basic Employee Life and AD&D benefits ("Death Benefits") under a group insurance policy that Unum issued to insure participating employees of Motrex LLC.

## PARTIES

1. Unum is a life insurance company incorporated under the laws of the State of Maine, with its principal place of business in Portland, Maine. It is, therefore, a citizen of Maine. It is duly licensed to do business in the State of Wisconsin.

2. Upon information and belief, Decedent was domiciled in Wisconsin and was a resident of Milwaukee County, Wisconsin, prior to his death.

1

3. Upon information and belief, Defendant Doris Winters, also known as Doris Anderson ("Doris"), was Decedent's spouse and is a citizen of Wisconsin, and is believed to be in the custody of the Milwaukee County Sheriff's Office in the State of Wisconsin.

4. Upon information and belief, Defendant Lisa Winters is Decedent's sister and a citizen of the State of Wisconsin, and a resident of and domiciled in Milwaukee County, Wisconsin.

5. Upon information and belief, Defendant Gary Winters is Decedent's brother and a citizen of the State of Wisconsin, and a resident of, and domiciled in, Milwaukee County, Wisconsin.

6. Upon information and belief, Defendant James Winters is Decedent's brother and a citizen of the State of Wisconsin, and a resident of, and domiciled in, Milwaukee County, Wisconsin.

## JURISDICTION AND VENUE

7. This is an interpleader action brought pursuant to Rule 22 of the Federal Rules of Civil Procedure. This Court has jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. §1331 because this action involves competing claims for benefits, including the possible disqualification of a beneficiary, and to enforce rights pursuant to the Plan, which is governed by ERISA, a law of the United States. Defendants, as an actual, putative, or potential beneficiary of the Plan, could bring an action against Unum for recovery of benefits under ERISA's civil remedies provisions, 29 U.S.C. § 1132 *et seq*. Thus, subject matter jurisdiction exists in this matter because the potential actions would present a substantial question of federal law. Unum seeks interpleader, a form of equitable relief, available under 29 U.S.C. § 1132(a)(3).

8. Additionally, a Fed. R. Civ. P. 22 interpleader action, which is fundamentally equitable in nature, is a remedy available to plan fiduciaries pursuant to ERISA, 29 U.S.C. § 1132(a)(3), for the purpose of avoiding multiple liability to adverse claimants for the same benefits.

9. Venue in this judicial district is proper under 29 U.S.C. § 1132(e)(2) because certain Defendants reside in this judicial district and a substantial part of the events giving rise to this action occurred in this district.

**FACTUAL BACKGROUND**

10. Motrex LLC ("Employer") established and maintained a Group Health and Welfare Plan for the benefit of its employees (the "Plan"). At all relevant times, Employer sponsored the Plan through Group Policy No. 882394 001 (the "Group Policy"), issued by Unum to insure the Employer's employees. *See* **Exhibit A**, Group Policy.

11. The Plan and the Group Policy are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*.

12. Decedent was an employee of the Employer or one of its affiliates/subsidiaries, and a participant in the ERISA-governed Plan and Group Policy.

13. Under the Group Policy, Decedent had $44,000.00 in Basic Employee Life and AD&D coverage under the Plan (the "Death Benefits"), which the Group Policy funded.

14. Decedent's beneficiary designation on file with the Employer, named Doris Winters as 100% primary beneficiary. Decedent did not name a contingent beneficiary.

15. On or about May 31, 2025, Defendant Doris allegedly shot Decedent, leading to his death.

16. Doris has been arraigned on one count of first-degree reckless homicide with an allegation of use of a dangerous weapon, in connection with Decedent's death.

17. Unum, as the insurer and claim administrator under the Group Policy, must administer claims in accordance with the terms and conditions of the Group Policy.

18. The Group Policy establishes the right of a participant to name his or her beneficiary, and states that benefits will be paid to the designated beneficiary.

19. The Group Policy states that Unum will pay the insurance proceeds to the insured's beneficiary. Under the Group Policy, "[a]t the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your life insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect. It is important that you name a beneficiary and keep your designation current." *See* **Exhibit A**, p. LIFE-CLM-2; p. AD&D-CLM-2.

20. The Group Policy further states that "[i]f you do not name a beneficiary . . . or if your named beneficiary is disqualified, your death benefit will be paid to your estate." *See* **Exhibit A**, p. AD&D-CLM-2; p. AD&D-CLM-2.

21. The Group Policy further states that "[i]nstead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

(*See* **Exhibit A,** p. LIFE-CLM-2; p. AD&D-CLM-2)

22. Upon information and belief, Decedent has no surviving children or parents.

23. To the extent any surviving children or parents exist, their identities and claims are presently unknown to Unum. Any such persons may claim entitlement to some or all of the Death Benefits and therefore have interests adverse to one another and to the other Defendants named herein. The named Defendants are in a superior position to know whether any such individuals exist and may claim an interest in the Death Benefits.

24. In the absence of a Plan or ERISA provision on point, federal common law applies to decide the proper recipient of benefits in a slayer scenario. *Life Ins. Co. of N. Am. v. Camm*, No. 4:02-cv-00106, 2007 WL 2316480, at *5 (S.D. Ind. Aug. 6, 2007) (citing *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 567 (7th Cir. 2002)); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989). *See also*; *Cadle v. Shelton*, No. 2:11-cv-00787, 2013 WL 1282372 at *5 (S.D. Oh. Mar. 26, 2013) (citing *Tinsley v. Gen Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000)); *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1133 (9th Cir. 1996) ("ERISA requires that courts apply a federal common-law rule."); *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990) (ERISA does not address the proper designation of beneficiaries where a beneficiary feloniously kills the insured. Due to this lack of statutory direction, courts are instructed to look to "federal common law.").

25. Federal common law derives from the principle that no person should be permitted to profit from his own wrong. *Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 475-76 (7th Cir. 1999) ("The principle that no person shall be permitted to benefit from the consequences of his or her wrongdoing has long been applied to disqualify murderers from inheriting from their victims, whether the route of inheritance is a will, an intestacy statute, or a life insurance policy."); *see also Shoemaker v. Shoemaker*, 263 F.2d 931, 932 (6th Cir. 1959). Thus, the "Supreme Court

has long held that the law may not allow a person to benefit financially from a murder he has committed: 'It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken.'" *Camm*, 2007 WL 2316480, at *5 (quoting *Mut. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600 (1886)). Courts have uniformly concluded federal common law "prohibits a life insurance beneficiary who murders an insured from recovering under the policy." *Std. Ins. Co. v. Guy*, No. 21800074, 2021 WL 2410667, at *1 (E.D. Tenn. May 20, 2021) (quoting *Giles v. Ca.*, 554 U.S. 353, 384 (2008) (Breyer, J., Stevens, J., and Kennedy, J., dissenting)); *See also Cadle,* 2013 WL 128372 at *5 (*citing Giles v. California,* 554 U.S. 353, 384 (2008));; *Box v. Goodyear Tire & Rubber Co.*, 51 F. Supp. 3d 1147, 1154 (N.D. Ala. 2014) ("The federal common law principle regarding slayers is that no person should profit from her own wrong.") (citations omitted); *Hartford Life & Acc. Ins. Co. v. Rogers*, No. 3:13-CV-101, 2014 WL 5847548, at *2 (D.N.D. Nov. 12, 2014) ("It is well established in federal law . . . that a person should not financially benefit from the felonious or intentional killing of another human being.") (citations omitted); *Admin. Comm. for the H.E.B. Inv. & Ret. Plan v. Harris*, 217 F. Supp. 2d 759, 761 (E.D. Tex. 2002) ("It has long been a principle of federal common law that such killers should not be rewarded with insurance benefits for taking a life.") (citations omitted).

26. The Group Policy identifies Maine as the governing jurisdiction under its choice of law provision. (*See* **Exhibit A**, p. C.FP-1.) Title 18-C §2-802, Maine's so-called "Slayer Statute," states that "[a]n individual who feloniously and intentionally kills the decedent forfeits all benefits under this Article with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property and a family allowance. If the decedent died intestate, the decedent's intestate estate passes as if the killer

disclaimed the killer's intestate share." 18-C §2-802(2).

27. Title 18-C §2-802 goes on to state that:

> After all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section. In the absence of a conviction, the court, upon the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent. If the court determines that, under that standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent, the determination conclusively establishes that individual as the decedent's killer for purposes of this section.

Title 18-C §2-802(7).

28. Wisconsin law also has a so-called "Slayer Statute." Wisconsin Stat. § 854.14 provides that a person who unlawfully and intentionally kills the decedent is not entitled to any benefits by reason of the decedent's death and is treated as having predeceased the decedent for purposes of determining the distribution of property and benefits. Wisconsin courts have long recognized the equitable principle that a killer may not profit from his or her own wrongdoing. *See, e.g., Estate of Miller*, 2004 WI App 117, ¶¶ 16–18, 274 Wis. 2d 733, 683 N.W.2d 124.

29. Unum has sent multiple letters to Doris inquiring whether she would disclaim her interest in the Death Benefits, with no response.

## BASIS FOR INTERPLEADER

30. Unum is subject to multiple liability with respect to the Death Benefits payable upon Decedent's death, because of rival claims by Defendants.

31. Unum is unable to determine which Defendant(s) may be entitled to the Death Benefits and is in the position of an innocent stakeholder faced with the possibility of multiple

liability and incidental costs.

32. Unum has no claim to or interest in the Death Benefits, except for the payment of its reasonable attorneys' fees and costs incurred in bringing this action for interpleader, and Unum at all times has been willing to deliver to the person or persons entitled to possession.

33. Unum has in no way colluded with any Defendant concerning the matters of this case.

34. Unum has filed this Complaint of its own free will to avoid multiple liability and unnecessary suits and costs incidental to them.

35. Unum unconditionally offers and is ready to deposit with the Court the Death Benefits in the amount of $44,000.

WHEREFORE, Unum respectfully requests that this Honorable Court grant the following relief:

A. That each of the Defendants be restrained from instituting any action against Unum related to the recovery of the Death Benefits;

B. That Unum be permitted to remit the Death Benefits into the Registry of this Court pending judgment;

C. That the Defendants be required to interplead and settle among themselves their rights to the Death Benefits;

D. That Unum be discharged from all liability under the Group Policies and Plan with respect to the death of Decedent;

E. That Unum be awarded its attorneys' fees and costs, and that this amount be deducted from the Death Benefits; and

F. For such further relief as the Court may deem appropriate.

Respectfully submitted this 6th day of February, 2026.

*/s/ Rachel Urquhart*
Rachel Urquhart, Bar #6287929
Maynard Nexsen PC
2751 E Jefferson Ave, Suite 400
Detroit, MI 48207
Telephone: 313.426.9481
Email: rurquhart@maynardnexsen.com

*Attorney for Plaintiff Unum Life Insurance Company of America*